UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY HUDSON JR., | ) |
|       Petitioner, | ) ) ) |
| v. | )   Case No. 4:11-CV-1103-NAB |
| PENNY MILBURN, | ) ) ) ) |
|       Respondent | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Gregory Hudson Jr.'s Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. [Doc. 1]. Respondent Jeff Norman filed a Response. [Doc 10]. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons set forth below, Hudson's petition for writ of habeas corpus will be denied.

### I.     Background

After a jury trial, Hudson was convicted of first degree murder and armed criminal action. *State v. Hudson*, 230 S.W.3d 665, 667 (Mo. Ct. App. 2007). The evidence[1] viewed in the light most favorable to the verdict established the following: On April 27, 2004, Ashley Arnold and Cortez Burton noticed Hudson, an acquaintance from school, waiting at a bus stop. *State v. Hudson*, 230 S.W.3d 665, 667 (Mo. Ct. App. 2007). Arnold and Burton stopped and asked Hudson if he wanted a ride. *Id.* Hudson declined and told Arnold he had a ride coming, but he asked Arnold and Burton to wait for him. *Id.* A few minutes later Arnold and Burton saw

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Hudson in the front seat of Jonny Washington's car fighting with Washington and the victim, Jarrett Williams. *Hudson*, 230 S.W.3d at 667. Burton tried to intervene, but eventually returned to the car with Arnold. *Id.* Hudson and Williams eventually rolled out of the passenger side of the car, and Williams began to run away. *Id.* Hudson then called Williams a "bitch," shot him in the back, turned to Washington and said, "I oughta shoot your old ass, too." *Id.* Williams died as a result of the gunshot wound to his abdomen. *Id.* Hudson then ran away and jumped into the back of Arnold and Burton's car as they drove away. *Id.* At an intersection, Hudson left the car and boarded a bus. Arnold and Burton drove to Bonnie Polk's apartment and told her they had witnessed Hudson shoot a man. *Id.*

Washington was unable to identify the shooter. *Id.* An eyewitness, Ronald Walter, saw the altercation and identified Hudson from a photo array and photographed lineup. *Id.* Walter also witnessed Hudson leave the scene and reported part of the license plate number to the police. *Id.* Homicide detective, Thomas Carroll found two cars matching the partial plate number, one of which was a Honda Accord registered to Polk. *Id.*

Carroll then telephoned Polk to question her about the vehicle and she stated that her friends, Arnold and Burton, had borrowed her car on the day of the shooting, and that she had not driven it that day. *Hudson*, 230 S.W.3d at 667. Burton and Arnold were with Polk at her apartment during the telephone call, and Arnold got on the phone and admitted to being at the scene of the shooting. *Id.* Burton was never handed the phone, but Arnold gave Carroll Burton's telephone number. *Id.*

Arnold agreed to go to police headquarters, but when she failed to appear for her appointment, police went to Polk's apartment and apprehended Arnold and Burton. *Id.* Arnold and Burton were placed in separate interrogation rooms and questioned about the homicide. *Id.*

at 3. Neither gave police Hudson's last name name but they both identified Hudson's photograph. *Id.* They also both made videotaped statements to the police. *Id.*

Hudson was arrested and charged with first degree murder, two counts of armed criminal action, and attempted first degree robbery. *Hudson*, 230 S.W.3d at 667. Hudson was found guilty of first degree murder and one count of armed criminal action. *Id.* at 668. He was acquitted of all other counts and was sentenced to consecutive terms of imprisonment for life without parole and life. *Id.*

In his petition for writ of habeas corpus, Hudson raises six grounds for relief. First, Hudson asserts that the trial court erred and abused its discretion by permitting the state to present the testimony of Bonnie Polk. Second, Hudson alleges violations of his 5th, 6th, and 14th Amendment rights under the U.S. Constitution for the court's overruling of defense counsel's objection to improper comments made by Detective Carroll. Hudson's remaining grounds for relief allege ineffective assistance of counsel in violation of the 5th, 6th, and 14th Amendments of the U.S. Constitution.

## II. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d)(1)-(d)(2) (1996).

For purposes of § 2254(d)(1), "'federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Evanstad v. Carlson,* 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. *Id.* at 783 (citing *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006)).

A state court's decision is contrary to clearly established Supreme Court precedent "if the state court either applies a rule that contradicts the governing law set forth in the [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001). A state court decision is unreasonable application of clearly established Supreme Court precedent, "if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* "Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Evanstad,* 470 F.3d at 782. "A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

### III. Discussion

#### A. State Court Evidentiary Rulings

Hudson's first and second points of review challenge state court evidentiary rulings. "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The federal habeas court can only determine whether the evidentiary rulings resulted in a constitutional violation. *Bounds v. Delo,* 151 F.3d 1116, 1119 (8th Cir. 1998). "Not every trial error amounts to a constitutional deprivation." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). A state-court evidentiary ruling becomes a constitutional violation only when it is "so conspicuously prejudicial or of such a magnitude as to fatally infect the trial and deprive the defendant of due process." *Bounds*, 151 F.3d at 1119. "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial- i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson*, 44 F.3d at 679.

##### 1. Admissibility of Hearsay Statements

For the first point of review, Hudson claims the trial court improperly admitted the testimony of Bonnie Polk, and in so doing, the trial court abused its discretion. Hudson asserts that Polk's testimony was improperly admitted for the following reasons: (1) the statements were hearsay statements that did not fall within any recognized exception to the hearsay rule; and (2) the alleged hearsay statements improperly bolstered Arnold and Burton's credibility to the prejudice of the petitioner. Respondent asserts that the testimony was admissible, and that the trial was fair.

Prior to Polk's testimony, Arnold had been cross-examined by defense counsel concerning her whereabouts, activities, and any discussions between herself and Polk and Burton following the shooting. (Resp't. Ex. A at 297-300.) Arnold testified that she returned to Polk's house with Burton and told Polk what had happened. *Id.* at 297. Arnold and Burton then remained at Polk's home for two days, with the exception of driving Polk to work. *Id.* at 298-300. Defense counsel questioned Arnold regarding her discussions with Polk and Burton about the shooting, but Arnold maintained they only briefly discussed the shooting on the day it occurred. *Id.* at 297-300.

Burton was also cross examined concerning his whereabouts and discussions after the shooting. *Id.* at 459-60. He was asked how long he stayed at Polk's apartment, but testified he could not remember. *Id.* at 459. Burton testified that he did not spend the night, and that he told Polk that Hudson had shot someone and he did not know why. *Id.* at 459-60. He also testified that Arnold told him that the the police were looking for him. *Id.* at 460.

At trial, the State called Polk to testify about Burton and Arnold's statements when they returned to Polk's residence on the morning of the incident. Defense counsel objected to this testimony on the grounds that this proffered testimony was not triggered by a prior inconsistent statement. (Resp't. Ex. A at 546.) The trial court allowed the State to present Polk's testimony. *Id.*

Polk then testified for the prosecution that Arnold and Burton returned to Polk's apartment before noon, shortly after the shooting and told Polk that Hudson had shot Williams. *Id.* at 552. Polk also testified that Arnold and Burton were acting calm and nervous when they returned to the apartment. *Id.* On cross-examination, Polk testified about her close friendship with Burton and Arnold in 2004, the year the shooting took place. *Id.* at 553-54.

6

In this case, the trial court correctly identified the governing legal standard for prior consistent statements. The trial court noted that the sole, limited purpose for which the State was calling the witness was to testify that on the morning of the incident that Burton and Arnold came to her residence in an excited state and indicated that the defendant had shot a man. (Resp't Ex. A at 545.) The appellate court also found Polk's testimony was properly offered to rehabilitate Arnold and Burton, considering defense counsel's repeated attempts to impeach Burton and Arnold. The appellate court highlighted defense counsel's questions concerning Arnold's delay in contacting police, Arnold's inconsistencies with grand jury testimony, Burton's inconsistencies with grand jury testimony and deposition testimony, and Burton's prior encounters with the defendant.

While defense counsel did not explicitly impeach Arnold or Burton, his cross-examination emphasized inconsistencies in the witnesses' testimony and the close relationship between Arnold and Burton, impliedly calling into question their credibility. Any evidence tending to permit an inference that a witness's testimony was recently fabricated opens the door for use of a witness's statements made prior to the suggested fabrication. *U.S. v. Andrade,* 788 F.2d 521, 533 (8th Cir. 1986) (where defense counsel deliberately created an inference of inaccuracies to imply a recent fabrication, the government was permitted to introduce prior consistent statements to rehabilitate a witness).

Even if this Court were to determine that admission of Polk's testimony was in error, Hudson has failed to show there is a reasonable probability the result of the trial would have been different had the evidence not been admitted. Another witness, Walter identified him as the shooter and provided the correct make and model car and partial license plate. Therefore, the state court's decision regarding Hudson's first point of error did not result in a decision that is

contrary to or involved an unreasonable application of clearly established federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Hudson's first point for review will be denied.

## 2. Admission of Detective Carroll's Testimony

For the second alleged point of review, Hudson claims the trial court violated his 5th, 6th and 14th Amendment Rights to the United States Constitution by overruling defense counsel's objection to Detective Carroll's testimony. Hudson asserts that Detective Carroll's testimony improperly bolstered Arnold and Burton's testimony and invaded the province of the jury to determine Arnold's and Burton's credibility. Petitioner contends that the testimony was prejudicial because left uncorrected, the jury was likely to give the detective's assessment of Arnold and Burton's credibility undue weight. Respondent asserts that this claim lacks merit.

Defense counsel extensively questioned Detective Carroll on cross examination regarding his treatment of Arnold and Burton during the investigation of the shooting. (Resp't Ex. A at 614-626.) Specifically, defense counsel questioned whether Arnold or Burton had ever been potential suspects or just witnesses. *Id.* at 615. Defense counsel questioned the detective about the concept of accomplice liability. *Id.* at 624-625. Carroll testified he believed he would have explained the concept of accomplice liability to Arnold and Burton, that if they were involved in the shooting they could be charged. *Id.* at 624-625.

On redirect, the prosecution asked Carroll why he made the determination not to treat or charge Arnold or Burton as suspects. *Id.* at 642. The testimony proceeded as follows:

> Q. Why did you not charge them?
>
> A. I believed them, believed what they were saying.

8

> Q. And that's based upon 10 years of homicide experience.
>
> Mr. Taafe: Objection, your Honor, his belief of the witness is improper.
>
> Mr. Bird: He opened the door.
>
> Mr. Taafe: It is the province of the jury. I ask the court to admonish the witness and tell the jury to ignore the opinions of the officer.
>
> Mr. Bird: He opened the door. Why isn't he treating them as suspects repeatedly he's asked the question. They're entitled to know.
>
> The Court: Overruled.

Hudson cannot show that the Carroll's testimony was so prejudicial that absent his testimony, the verdict would have been different. Carroll did not testify as to the truthfulness of Arnold or Burton's statements. On cross-examination, defense counsel questioned Carroll about whether Arnold or Burton were ever suspects, and whether they were treated as witnesses. (Tr. 615.) Defense Counsel's inquiry into Arnold and Burton's involvement in the crime implied that Arnold and Burton were suspects and should have been treated as accomplices. Therefore, the State was entitled to remove these negative implications. Defense counsel brought the negative inference surrounding Arnold and Burton into the case, and the prosecution was allowed to counteract that inference.

Because three witnesses identified Hudson as the shooter, Hudson would be unable to demonstrate that a different outcome would have resulted if the trial court had sustained the objection to Detective Carroll's testimony. The appellate court upheld the trial court's evidentiary ruling. It found Detective Carroll's testimony was properly offered to counteract a negative inference regarding an issue that the defense brought into the case. Therefore, the

decision to allow Detective Carroll's testimony did not result in a decision that is contrary to or involved an unreasonable application of clearly established federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Hudson's second point for review will be denied.

### B. Ineffective Assistance of Counsel Claims

In his third and fifth allegations of review, Hudson asserts that he received ineffective assistance of counsel. Hudson asserts that his trial counsel failed to investigate and subpoena two material witnesses and failed to move to strike a venireperson who saw him in his prison jumpsuit. Respondents contend that the state court properly considered and denied relief on Hudson's claims.

#### 1. Standard

To obtain relief based on ineffective assistance of counsel, a petitioner must establish: (1) that the trial counsel's performance fell below an objective standard of reasonableness; and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Both prongs of *Strickland* must be shown to succeed on a claim for ineffective assistance of counsel. *Id*. at 697. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, then that course should be followed." *Id.*

To satisfy the first prong of *Strickland*, a petitioner must identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable, professional judgment. *Id.* at 688. Then, the court must determine whether "in light of all the circumstances, the identified actions or omissions were outside the range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is

"strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the second prong of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether sufficient prejudice does exist, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Additionally, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to law." *Id.* at 694.

### a. Witnesses McIntire and Florez

First, Hudson alleges that, prior to trial, he provided trial counsel with the names and contact information of two eyewitnesses to the shooting incident, Ivory McIntire and Roscoe Florez. Hudson contends that both witnesses were willing and available to testify on his behalf at the time of his trial.

Hudson alleges that McIntire would have testified that she saw the incident, the shooter wore a white shirt, and the shooter drove the get-away car. Hudson contends this evidence would show that the shooter was wearing what Burton wore and that the shooter was in the driver's seat of the get-away car. Hudson also alleges that Florez would have testified that he was in the car with Walter and Walter could not have seen the shooting as he testified in court, because they had already passed the scene when the shooting occurred and Florez saw nothing.[2]

McIntire's testimony would have differed from several of the prosecution's witnesses at trial. During trial, Arnold testified that Hudson wore a black and gray coat, Walter testified that

---

[2] The Court notes that Hudson's habeas petition only states that Florez "would've testified to seeing nothing." The remainder of his argument regarding Florez's testimony is derived from the briefing of his during the state court proceedings. Resp't Ex. H at 21-25.

11

shooter wore a dark jumpsuit, and Burton testified that Hudson wore a black and red jacket. Resp't Ex. A at 252, 348, 418. Florez's testimony would have contradicted Walter's testimony that he and his helper were approaching the scene of the shooting when the shooting occurred. Resp't Ex. A at 344, 387-88.

Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *U.S. v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "When evaluated in this light, counsel's performance did not fall outside the range of professionally reasonable performance." *Parker v. Bowersox*, 94 F.3d 458, 461 (8th Cir. 1996).

The Missouri Court of Appeals held that McIntire and Florez's potential testimony would have impeached the prosecution's witnesses, but would not have provided testimony negating an element of the charged crime. Thus, neither witness would have provided Hudson with a viable defense.

Applying *Strickland*, the Court finds that Hudson was not prejudiced by the failure to call McIntire and Florez as witnesses. It is unlikely that their testimony would have changed the outcome of the trial. McIntire's testimony concerning the color of defendant's t-shirt would not have effectively discredited identification of defendant by Arnold and Burton since both Arnold and Burton knew Hudson prior to the shooting. Further, Florez's testimony would not reasonably infer that Walker's identification of Hudson as the shooter was erroneous, because Walker gave the police an accurate description of the get-away car and a partial license plate

number. Based on the foregoing, Hudson is unable to demonstrate that the outcome of his trial would have been different if Florez and McIntire had testified. Therefore, the decision regarding Florez and McIntire's testimony did not result in a decision that is contrary to or involved an unreasonable application of clearly established federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Hudson's third point for review will be denied.

### b. Use of Shackles

Next, Hudson asserts that during voir dire, a venireperson who eventually served on the jury, saw him shackled and wearing an orange jumpsuit after a recess in the proceedings. Resp't Ex. H at 27-28.[3] Hudson asserts that while on an elevator with deputies, the elevator stopped at a floor and when the doors opened the aforementioned venireperson was standing there, she made eye contact with him for a few seconds, she apologized and did not get on the elevator.

The Missouri Court of Appeals held that Hudson was not prejudiced by the venireperson's brief viewing of him in shackles and an orange jumpsuit, because a juror's brief exposure to a handcuffed defendant does not deprive a defendant of a fair trial and jurors are aware of the normal practice of handcuffing prisoners during travel.

The Constitution forbids the use of visible shackles unless that use is justified by an essential state interest specific to the defendant on trial. *Deck v. Missouri,* 544 U.S. 622, 632 (2005). Visible shackling undermines the presumption of innocence and related fairness of the fact-finding process. *Id.* at 630. However, "the mere fact that a juror had a brief view of a defendant in custody is insufficient to establish there was sufficient prejudice to warrant a new trial." *United States v. Van Chase,* 137 F.3d 579, 583 (8th Cir. 1998) (juror's brief view of

---

[3] Again, Hudson's petition does not completely explain his ineffective assistance of counsel claim and Petitioner's argument is derived from the briefing in the state court proceedings.

defendant in restraints on an elevator insufficient to establish enough prejudice to warrant new trial).

In this case, the state court properly found that Hudson suffered no prejudice as a result of the brief encounter with the venireperson. Therefore, the decision regarding the venireperson's view of him in shackles did not result in a decision that is contrary to or involved an unreasonable application of clearly established federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Hudson's fifth point for review will be denied.

### 2. Procedural Default

Hudson's fourth and sixth grounds for review are subject to procedural default, because he failed to raise these claims during the state court proceedings. "Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. 722 at 750.

To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made

compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id*. at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

### a. Refusal of Court to Strike Testimony of Arnold and Burton

Hudson contends that his fourth point of review is an ineffective assistance of counsel claim, but the substance of the claim asserts that the trial court erred in refusing to strike the testimony of Arnold and Burton or declare a mistrial, because their testimony differed materially from prior statements. Hudson did not allege trial court error regarding striking Arnold or Burton's testimony in the state court proceedings. Hudson's Petition states that his "public defender did not wish to pursue" the claim. Thus, the Court assumes that Hudson is alleging that the trial court error was procedurally defaulted due to ineffective assistance of counsel. As it stands, this ineffective assistance of counsel claim is also procedurally defaulted as it also was not raised in Hudson's state court proceedings. This is the first time he raises these errors for review. Therefore, "[i]n order for ineffective assistance of counsel claim itself to be cause to excuse a procedural default, the ineffective assistance of counsel must rise to the level of an independent constitutional violation. *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004). Hudson must show that counsel's performance was constitutionally substandard and prejudice resulted therefrom. However, because the ineffective assistance of counsel claim is also

15

procedurally defaulted, Hudson must show cause and actual prejudice for that claim to be considered on federal habeas review. *See Edwards,* 529 U.S. at 453. (procedural default in asserting ineffective assistance of counsel asserted as cause for the procedural default of another claim may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim).

The Court finds that Hudson cannot show cause and actual prejudice for failure to assert his ineffective assistance of counsel claim in the state court proceedings. Hudson has failed to identify any objective factors that would have prevented him from asserting these claims in his state court proceedings. The legal and factual basis for the claim was reasonably available to Hudson and there is no evidence of interference by government officials. Moreover, Hudson cannot establish actual prejudice, because the claim easily fails on the merits. "It is the province of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011). Defense counsel extensively cross-examined Arnold and Burton, focusing specifically on their lack of credibility. It was for the jury to decide whether the defense's impeachment of their testimony affected their credibility and the weight to give their testimony. Therefore, Hudson cannot overcome the procedural default and Hudson's fourth point for review is denied.

### b. Additional Ineffective Assistance of Counsel Claims

For the sixth point for review, Hudson claims ineffective assistance of trial counsel for the following reasons: (1) trial counsel did not pursue any information provided by movant to bolster a viable defense, specifically failing to interview alibi witnesses, and failing to contact movant via phone or written correspondence to discuss trial strategy; (2) the trial counsel failed

16

to introduce into evidence the fact that Ashley Arnold and Cortez Burton were romantically involved to show motivation for committing perjury and offering false alibi testimony to protect Burton from being charged for murder; and (3) trial counsel denied Hudson's request to testify in his own defense solely based on the fact that he had prior, unrelated convictions, and Hudson would have testified that his whereabouts were someplace other than that of St. Louis Avenue on the day in question at the time the purported crime took place. Respondent asserts that further review of these claims is barred and that these claims lack merit.

All of these claims are procedurally defaulted. Again, it appears that Hudson is asserting that ineffective assistance of counsel is cause to excuse his procedural default of the aforementioned issues. Hudson's ineffective assistance of counsel claim is also procedurally defaulted. Thus, Hudson first must show cause and actual prejudice for failing to assert the ineffective assistance of counsel claims.

### i. Performance as Attorney

Hudson asserts that his trial counsel did not pursue information that would bolster his defense, failed to interview alibi witnesses, and failed to contact him regarding trial strategy. Hudson has not presented any evidence that would demonstrate an objective factor external to the defense that impeded his ability to bring this claim. At his sentencing, Hudson refused to answer questions regarding trial counsel's representation. (Resp't Ex. A at 737-739.) The judge specifically asked Hudson the following: (1) whether he discussed his case with his attorney; (2) whether Hudson told his attorney everything he needed to know; (3) whether his attorney did what he asked him to do or not to do; (4) whether he gave his attorney the names and contact information for witnesses and their potential testimony; (5) whether his attorney discussed trial strategy regarding any witnesses suggested by Hudson. *Id.* at 738-739. Hudson responded to

each question stating the he was reserving his right to answer any questions until he spoke with appellate counsel. *Id.* at 738-739. Therefore, Hudson was well aware that he could have brought an ineffective assistance of counsel claim regarding trial strategy, alibi witnesses, and viable defenses prior to filing for post-conviction relief and did not do so. Hudson has failed to show cause for his procedural default on these claims for ineffective assistance of counsel.

### ii. Relationship between Arnold and Burton

Next, Hudson claims that trial counsel did not introduce any evidence that Arnold and Burton were romantically involved. Hudson cannot show cause for failing to raise this claim in state court. The legal and factual basis for this claim was reasonably available to Hudson prior to filing his state post-convictions motions. Further, contrary to Hudson's assertion, the prosecution and defense counsel asked Arnold and Burton about their relationship. (Resp't Ex. A at 291-292, 406). Both denied romantic involvement and stated that they were just friends. *Id.* Therefore, Hudson has failed to show cause and actual prejudice on this claim for ineffective assistance of counsel regarding Arnold and Burton's testimony about their relationship.

### iii. Decision to Testify

Finally, Hudson asserts that trial counsel prevented him from testifying due to his prior convictions. Again, Hudson cannot show cause and actual prejudice for failing to bring this claim during his state post-conviction appeal. During trial, the trial judge advised Hudson that he had the right to testify and the decision was his alone. (Resp't Ex. A at 353-356) Hudson indicated to the judge that he understood that he had the right to testify and that it was his decision. *Id.* at 353-354. The judge also asked Hudson to alert the judge if he wanted to testify and his counsel does not call him to the witness stand. *Id.* at 354. Hudson agreed to notify the judge if he wished to testify and his counsel did not call him to the witness stand. *Id.* Therefore,

18

Hudson knew before filing his post-conviction motion, that he had the right to testify against his attorney's advice. Therefore, the factual and legal basis for his claim of ineffective assistance of counsel regarding his testimony was known to Hudson and he cannot show cause for default on this claim. Hudson's sixth point for review will be denied.

### IV.     Conclusion

Based on the foregoing, the court finds that Hudson's request for relief pursuant to 28 U.S.C. § 2254 should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Writ for Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  [Doc. 1]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Gerome Cummins for a Certificate of Appealability will be **DENIED**.

Dated this 22nd day of July, 2013.

      /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE